**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTOINE GAGNON and** | : | |
| **CHRISTIANE PELOQUIN,** | : | |
| **Plaintiffs** | : | |
| | : | |
| | : | **CIVIL ACTION NO. 1:CV-05-2081** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| | : | |
| | : | |
| **LEMOYNE SLEEPER CO., INC.,** | : | |
| **Defendant** | : | |

**MEMORANDUM AND ORDER**

**I.      BACKGROUND**

Pending before the Court is Defendant Lemoyne Sleeper's motion in limine. (Doc. No. 16.) Plaintiffs Antoine Gagnon and Christiane Peloquin are residents of Quebec, Canada. They bring this negligence suit for damages incurred on September 1, 2004, when Defendant's truck struck a third-party truck, then causing a second collision with Plaintiffs' vehicle while Plaintiffs were driving southbound along Interstate 81. After impact, Plaintiffs exited their vehicle to find that Defendant's driver, Mr. Hartmoyer, had died at the driver's wheel of his truck.  Plaintiffs allegedly sustained multiple injuries and post-traumatic stress disorder ("PTSD") from the accident.

Since the accident, Plaintiff Peloquin has received $20,498 and Plaintiff Gagnon, $120,409, from the Canadian Government's Société de l'Assurance Automobile du Quebec (SAAQ) for medical costs and lost wages. SAAQ has asserted subrogation liens against both Plaintiffs for any recovery they receive in this action. Plaintiffs seek damages to compensate

1

them for PTSD, medical expenses, pain and suffering, and lost wages.

## II.     DISCUSSION

### 1. Negligent Infliction of Emotional Distress

The parties agree that Pennsylvania law on negligent infliction of emotional distress ("NIED") applies to the claim for recovery based on PTSD. Defendant argues, however, that Plaintiffs should not be able to submit evidence relating to PTSD caused by the sight of seeing Mr. Hartmoyer's dead body because Pennsylvania law on NIED only allows recovery for emotional damages incurred by viewing the traumatic injury of a relative.

Pennsylvania law allows a plaintiff to recover for NIED by either experiencing a physical impact or by viewing a physical impact. Stoddard v. Davidson, 513 A.2d 419, 421 (Pa. Super. Ct. 1986). If there is no physical impact to the plaintiff, only then must the plaintiff further demonstrate that she was in the "zone of danger" or saw the traumatic physical impact of a family member. Sinn v. Burd, 404 A.2d 672 (Pa. 1979) (allowing an NIED recovery to plaintiffs outside the "zone of danger" if plaintiffs saw the physical impact upon a family member). If experienced, the physical impact need only be minor, so long as the alleged mental suffering is directly traceable to that impact. Potere v. City of Philadelphia, 112 A.2d 100, 104 (Pa. 1955). The emotional injury does not need to occur at the exact time of the physical impact, but rather, only must be directly traceable. See e.g., Potere, 112 A.2d at 104 (allowing recovery for mental anguish directly traceable to defendant's negligence); Stoddard v. Davidson, 513 A.2d 419 (Pa. Super. Ct. 1986) (allowing NIED recovery when the plaintiff, after the physical jarring of running over a dead body left in the road by the defendant, realized that he had run over a corpse and was questioned by the police about the body).

Here, Plaintiffs incurred physical injury–they were directly involved in an accident, which they allege was caused by Defendant's negligence. The question, then, is whether mental suffering caused by the sight of Mr. Hartmoyer's dead body is directly traceable to the physical impact of the crash. Plaintiffs' allegations and expert report suggest that the PTSD resulted from the accident, beginning with the physical contact and continuing through the discovery of Mr. Hartmoyer's dead body. Without other intervention, Plaintiffs exited their vehicle after the physical impact and investigated the well-being of the other drivers involved in the accident. Such actions were substantially contemporaneous with and the forseeable result of a car accident, and would, then, be directly traceable to any negligence involved in causing of the accident.

The Court finds that Plaintiffs' observation of Mr. Hartmoyer's corpse directly resulted from the physical impact of the accident and will allow evidence regarding the emotional impact of seeing his corpse and as well as Dr. Beck's testimony that the sight contributed to Plaintiffs' PTSD.

**2. Application of section 1722 of the Motor Vehicle Financial Responsibility Law**

Defendant also alleges that Plaintiffs should be precluded from admitting evidence relating to medical costs and lost income because SAAQ has already compensated them for those losses. Defendant argues that Pennsylvania law applies to this issue, and that the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") section 1722 precludes a plaintiff "from recovering the amount of benefits paid" by a "program, group contract, or other arrangement." 75 Pa. Cons. Stat. Ann. §§ 1719, 1722.

Plaintiffs, however, emphasize that Pennsylvania law should not apply because the anti-recovery provision of section 1722 is part of a legislative scheme that must be read in

3

conjunction with section 1720 of the MVFRL, an anti-subrogation provision. Yet, section 1720 could not be applied to this case because SAAQ is an out-of-state insurer not subject to this Court's jurisdiction. Instead, Plaintiffs argue, Quebec law, which has jurisdiction over SAAQ, will allow SAAQ to subrogate recovery Plaintiffs receive in this action regardless of whether this Court applies section 1722. And in fact, SAAQ has already placed a lien on Plaintiffs' potential recovery from this lawsuit.

In short, Defendant argues that failure to apply MVFRL section 1722 would contravene the legislative intent by allowing Plaintiffs to possibly recover twice, while Plaintiffs argue that application of section 1722 would be unjust and contravene the legislative intent because it would unfairly diminish their recovery due to the inapplicability of Pennsylvania's anti-subrogation provision and the insurer's subrogation rights under Quebec law.

To determine which jurisdiction's law applies, a district court must apply the choice of law rules of the state in which it sits. Klaxon v. Stentor Elec. Mfg., 313 U.S. 487 (1941). Pennsylvania's choice of law rule is to first examine whether a true conflict exists between the laws of the contending jurisdictions, and in the absence of a true conflict, to give controlling effect to the law of the interested jurisdiction. Griffith v. United Air Lines, Inc., 203 A.2d 796 (Pa. 1964). To determine whether a true conflict exists, a court must first look to the interests behind and the legislative intent of the laws at issue, then it must determine whether one or both of the jurisdiction's policies are implicated by the application of its own law to the set of facts before the court.

First, we examine Pennsylvania law. The MVFRL was enacted to "prevent a double recovery by accident victims" and to minimize insurance rates. Davish v. Gidley, 611 A.2d 1307,

1310 (Pa. Super. Ct. 1992). Pennsylvania's interests are not served by application of its law in this case because, if Plaintiffs were to recover here, they would not receive a double recovery because QAAC has already placed a lien on any recovery Plaintiffs receive in this action. (Doc. No. 16, Ex. E.)

Additionally, as the courts found in O'Malley v. Vilsmeier Auctions Co., 986 F.Supp. 306, 308 (E.D. Pa. 1997), Browne v. Nationwide Mutual Ins. Co., 674 A.2d 1127 (Pa. Super. Ct. 1996), and Serrano v. Cowles, 2008 WL 4442532 (E.D. Pa. Sept. 30, 2008), the anti-recovery provision of section 1722 must be read in conjunction with the anti-subrogation provision of section 1720. Because section 1720 denies insurers any right of subrogation from the tort recovery of an insured, and section 1722 only allows an insured to recover for damages that have not already been compensated by the insurer, the two statutes work together to create a legislative scheme that allows accident victims to receive compensation for their injuries, but ensures that they will not receive double compensation. O'Malley, 986 F.Supp. at 306. Due to jurisdictional constraints, however, this Court cannot enforce the anti-subrogation provision of section 1720 on out-of-state insurers. In O'Malley, which also concerned an out-of-state plaintiff, an out-of-state insurance company asserting a subrogation claim, and a Pennsylvania defendant, the court found that because it was unable to enforce the subrogation provision of section 1720, and thus both parts of the statutory scheme, the Pennsylvania policy was unserved and section 1722 was inapplicable. See also Davish v. Gidley, 611 A.2d at 1310 (holding that section 1722 of the MVFRL did not apply to an out-of-state insurer with subrogation rights because ruling otherwise would entitle the insurer to subrogate what the insured was not permitted to recover). This Court agrees. This Court cannot enforce the anti-subrogation

provision (section 1720) against QAAC because it is an out-of-state insurer with out-of-state insureds (Plaintiffs). The anti-recovery provision, then, cannot have been intended to apply to Plaintiffs in this action; it would not serve the interests of Pennsylvania law and it would lead to an unfair result.

Moreover, worker's compensation and social security benefits are exempt from the restrictions to recovery under section 1722. See e.g. Browne, 674 A.2d at 1129-30. As described by both parties, the QAAC benefits are government-awarded benefits which compensate citizens for medical costs and their inability to work due to injury, quite similar to social security disability benefits in the United States. For this reason as well, then, the Court finds that it would not serve the legislative intent for section 1722 to apply to Plaintiffs in this case.

The principles behind the Quebec law, though not expressly articulated in the briefs, do apply: Quebec has an interest in subrogating its citizens' recovery so that it might provide benefits only those citizens who would not otherwise receive them. Quebec also has an interest in ensuring that it is refunded when necessary so that it has enough money to provide those necessary benefits to citizens not otherwise compensated.

Thus, this Court holds that MVFRL section 1722 does not apply to this case and evidence relating to medical costs and lost wages will be permissible at trial.

**AND NOW**, on this 26th day of September, 2008, in consideration of Defendants' motion in limine (Doc. No. 16) and the foregoing reasoning, **IT IS HEREBY ORDERED** that Defendant's motion in limine is **DENIED**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

7