IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE GAGNON, et al., | : | CIVIL ACTION NO. **1:CV-05-2081** |
| | : | |
| | : | |
| | : | (Chief Judge Kane) |
| | : | (Magistrate Judge Blewitt) |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| LEMOYNE SLEEPER CO., INC, | : | |
| | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

## I. Background.

Presently pending before this Court are two Motions *in Limine* of Defendant Lemoyne

Sleeper Company, Inc. (Docs. 52 and 54).[1]  Both Motions are ripe for disposition.  Since the

exhibits were numerous, upon request of the Court, counsel for Defendant submitted two

notebooks containing hard copies of all documents, including the Motions *in Limine*, Briefs and

Exhibits, filed relevant to each of Defendant's Motions on April 13, 2009.[2]  The Court then

heard oral argument, on the record, with respect to the Motions on April 30, 2009.

---

[1]The undersigned was referred the two ripe Motions *in Limine* of Defendant Lemoyne
Sleeper (Docs. 52 and 54) by the District Court on March 18, 2009.  Doc. 66.

[2]For convenience of the Court, we will refer to the notebook containing the documents
relevant to Defendant's Doc. 52 Motion as Doc. 52A, followed by the document index number
Defendant assigned to it, *e.g.*, Doc. 52A-1.  The Court notes that Plaintiffs' counsel was
provided with copies of the notebooks.  Defendant's counsel did not submit copies of Dr.
Sullivan's and Dr. Beck's expert reports.

Initially, the Court notes that a *Daubert* Hearing[3] was not held since it was not specifically requested in Defendant's Motions *in Limine* and since it was unnecessary because the record, which included the trial deposition testimonies of Dr. Sullivan and Dr. Beck, as well as the Briefs of the parties (*See* Docs. 52A and 54A), was sufficient for the Court to make a proper determination.  *See Feit v. Great West Life and Annuity Ins. Co.*, 271 Fed. Appx. 246, 250, 253 -254  (3d Cir. 2008) ("it is within the discretion of the District Court to determine whether a hearing is necessary.") (citation omitted).[4]

Since the District Court recently stated the factual background of this case in its November 20, 2008 Memorandum and Order, we quote it as follows:

> Plaintiffs Antoine Gagnon and Christiane Peloquin are residents of Quebec, Canada. They bring this negligence suit for damages incurred on September 1, 2004, when Defendant's truck struck a third-party truck, then causing a second collision with Plaintiffs' vehicle while Plaintiffs were driving southbound along Interstate 81. After impact, Plaintiffs exited their vehicle to find that Defendant's driver, Mr. Hartmoyer, had died at the driver's wheel of his truck. Plaintiffs allegedly sustained multiple injuries and post-traumatic stress disorder ("PTSD") from the accident.
>
> Since the accident, Plaintiff Peloquin has received $20,498 and Plaintiff Gagnon, $120,409, from the Canadian Government's Société de l'Assurance Automobile du Quebec (SAAQ) for medical costs and lost wages. SAAQ has asserted subrogation liens against both Plaintiffs for any recovery they receive in this action. Plaintiffs seek damages to compensate them for PTSD, medical expenses, pain and suffering, and lost wages.

---

[3] *See Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993).

[4]Also, the Court notes that when oral argument was scheduled and when the Court held oral argument, no party requested that a *Daubert* Hearing instead be conducted.

2008 WL 5061677, *1 (M.D. Pa.).

In its November 20, 2008 Memorandum and Order, the District Court denied Defendant's Doc. 16 Motion *in limine* to preclude Plaintiffs from submitting evidence relating to PTSD caused by the sight of Mr. Hartmoyer's (an employee truck driver of Defendant) dead body.  The District Court stated, "The Court finds that Plaintiffs' observation of Mr. Hartmoyer's corpse directly resulted from the physical impact of the accident and will allow evidence regarding the emotional impact of seeing his corpse and as well as Dr. Beck's testimony that the sight contributed to Plaintiffs' PTSD."  *Id*. at *2.

Jurisdiction of this Court is based on diversity pursuant to 28 U.S.C. § 1332(a).  *See Feit v. Great West Life and Annuity Ins. Co.*, 271 Fed. Appx. 246, 251 (3d Cir. 2008).  The parties have not consented to proceed at trial before the undersigned pursuant to 28 U.S.C. § 636(c).

## II.  Discussion.

*Doc. 52 Motion in Limine of Defendant to Preclude Testimony of Plaintiffs' Expert, Dr. James D. Sullivan and Doc. 54 Motion in Limine of Defendant to Preclude Testimony of Plaintiffs' Expert, Dr. Philip R. Beck*

In *Keller v. Feasterville Family Health Care Center,* 557 F. Supp. 2d 671, 675 (E.D. Pa. 2008), the Court stated:

> "an experts's testimony is admissible so long as the process or technique used in formulating the opinion is reliable," *Pineda,* 520 F.3d at 247 (citing *Paoli II,* 35 F.3d at 742), and the expert's principles and methods are reliably applied to the facts of the case, Fed.R.Evid. 702 (advisory committee notes). The "expert's opinions must be based on the methods and procedures of science, rather than on subjective belief or unsupported speculation." *Paoli II,* 35 F.3d at 742 (citations and internal quotations omitted). Thus, "the expert must have 'good grounds' for his or her belief." *Id.* (quoting *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786).

The *Keller* Court also stated:

> Ultimately, the purpose of the reliability requirement "is to make certain an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). As such, the "focus must be solely on principles and methodology, not on the conclusions they generate." *Paoli II,* 35 F.3d at 744. I must examine the expert's conclusions to determine whether they reliably follow from the facts known to the expert and the methodology used. *Heller v. Shaw Industries, Inc.,* 167 F.3d 146, 153 (3d Cir.1999). "A court may conclude that there is simply too great a gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).
>
> "While a litigant has to make more than a prima facie showing that his expert's methodology is reliable ... 'the evidentiary requirement of reliability is lower than the merits standard of correctness.' " *Pineda,* 520 F.3d at 247 (quoting *Paoli II,* 35 F.3d at 744). I have significant latitude both in deciding "how to test an expert's reliability" and in deciding "whether or not the expert's relevant testimony is reliable." *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167. The " 'inquiry envisioned by Rule 702 is ... a flexible one.' " *Pineda,* 520 F.3d at 248 (quoting *Daubert,* 509 U.S. at 594, 113 S.Ct. 2786).
>
> If an expert's testimony rests on "good grounds ... it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *United States v. Mitchell,* 365 F.3d 215, 244 (3d Cir.2004); *Robinson,* 2007 WL 2571447, at *5. "A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination." *Mitchell,* 365 F.3d at 244 (quoting *Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 414 (3d Cir.2002)). Vigorous cross-examination, as Professor Wigmore noted, is "beyond any doubt the greatest engine ever invented for discovery of truth." *Watkins v. Sowders,* 449 U.S. 341, 349 n. 4, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) (citing 5 J. Wigmore, Evidence § 1367, p. 32 (J. Chadbourn rev. 1974)); *see also* Fed.R.Evid. 702 (advisory committee notes) (citing *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786).

*Id.* at 676.

Finally, "[i]n addition to the "good grounds" requirement, in a diversity case such as this, state rules on the degree of certainty required of an expert's opinion apply. In Pennsylvania, a doctor can [offer] an opinion [only] if he or she can do so with a reasonable degree of medical certainty." *Heller,* 167 F.3d at 153 n. 4 (citing *Paoli II,* 35 F.3d at 750-52)." *Id.*

Dr. Sullivan is the expert orthopaedic surgeon expert witness proffered by Plaintiffs for trial. He has issued an expert report and he has been deposed, in Quebec, for trial on January 13, 2009. (Doc. 52, Ex. A). He speaks, reads and understands both French and English.[5] Dr. Sullivan was not a treating physician of either Plaintiff. Rather, he was retained only as an expert medical witness for purposes of trial.

Defendant has objected to the testimony of Dr. Sullivan and it seeks to preclude his entire trial deposition testimony from being heard by the jury. Alternatively, Defendant seeks to preclude portions of Dr. Sullivan's trial deposition testimony it deems inadmissible under FRE 703 and 803(6). (Doc. 52).[6]

At oral argument, Defendant contended that Dr. Sullivan's testimony (*i.e.* his January 13, 2009 trial deposition testimony, Doc. 52A-1) was almost verbatim from the reports of Plaintiffs'

---

[5]During oral argument, it was represented to the Court that Plaintiffs' treating Canadian doctors, for both medical and psychological conditions allegedly suffered by Plaintiffs from the accident, speak only French, and they have not been identified by Plaintiffs as witnesses for trial and they have not been deposed for trial.

[6]Since the oral arguments of Defendant's counsel equally pertained to both of Defendant's Motions *in Limine* with respect to the trial deposition testimonies of Dr. Sullivan and Dr. Beck, the Court will not fully repeat them when it addresses Defendant's Doc. 54 Motion relating to Dr. Beck.

treating physicians, and that Dr. Sullivan was merely parroting the opinions of Plaintiffs' treating physicians. Defendant's counsel stated that when he tried to question Dr. Sullivan about the bases of his opinions, the doctor continually relied upon the uncertified and unauthenticated records of Plaintiffs' treating physicians. Thus, Defendant's counsel argued that since Dr. Sullivan was relying only on the uncertified and unauthenticated records of Plaintiffs' treating physicians and the opinions of the treating physicians contained therein, records which, according to Defendant, would not be admissible at trial under the hearsay business exception found at FRE 803(6), the doctor's entire testimony should be precluded. Defendant's counsel stated that Plaintiffs' expert doctor could not testify about the opinions of the Plaintiffs' treating physicians contained in their records since these records were not admissible by themselves. Defendant's counsel also argued that Dr. Sullivan (as well as Dr. Beck) could not testify to the opinions and diagnoses of Plaintiffs' treating physicians since these opinions and diagnoses contained in unauthenticated hospital records and physician records were inadmissible under FRE 803(6). Defendant's counsel stated that since Plaintiffs have decided  to offer non-treating doctors, instead of their treating doctors, as experts, Plaintiffs' hospital and treating physician records are not admissible because they were not authenticated.

While Defendant's counsel agreed with the Court that under FRE 703, Dr. Sullivan could rely upon hearsay documents, if they are the type of documents normally (or reasonably) relied upon by a doctor to form an opinion, Defendant's counsel stated that Dr. Sullivan's testimony must be based on sufficient facts and data, and he cannot disclose inadmissible evidence to the jury. (Doc. 52, pp. 10-11). Defendant's counsel stated that in our case, Dr. Sullivan was given

6

only the unauthenticated medical records of Plaintiffs' treating physicians to review and that he admitted that he was not given other necessary data such as Dr. Beck's report, photos of the accident scene and the vehicles involved, police reports, the deposition transcript of truck driver Moore (who was driving directly behind Plaintiffs' truck), and the accident reconstruction reports (both Plaintiffs' and Defendant's). (*See* Doc. 52, ¶ 7. and Doc. 52A-1, NT 37-38). Thus, Defendant's counsel argued that Dr. Sullivan did not have enough information to form an expert opinion and that his opinions were only based on the opinions of Plaintiffs' treating physicians and that he was only parroting the inadmissible opinions of Plaintiffs' treating physicians. Defendant's counsel contended that Dr. Sullivan did not have sufficient information to form any expert opinion regarding causation of Plaintiffs' alleged injuries. Defendant's counsel stated that the facts and data upon which Dr. Sullivan exclusively relied were the hospital records and the records of Plaintiffs' treating physicians, and counsel stated that these records were not admissible since they were not authenticated.

Moreover, Defendant's counsel argued that a physician expert witness must testify to a reasonable degree of medical certainty, *i.e.* the appropriate legal standard utilized in federal courts and in Pennsylvania courts. *See Keller, supra*. Defendant's counsel stated that Dr. Sullivan did not know the applicable legal standard required for an expert opinion in United States Courts. Defendant's counsel cited to *Griffin v. Univ. of Pitts. Medical Center-Braddock Hosp.*, 950 A. 2d 996 (Pa. Super. 2008). (Doc. 52, ¶ 39.). Defendant's counsel stated that when he asked Dr. Sullivan what was the reasonable degree of medical certainty standard and what this standard meant to him, Dr. Sullivan replied, respectively, "more than 50%" and

"something you can be sure of more than one half of the time." Defendant's counsel stated

that *Griffin* held that an expert cannot testify based on a standard of "more than 50%," and he

stated that this was precisely what Dr. Sullivan did. Defendant's counsel stated that based on

*Griffin*, both of Dr. Sullivan's responses were insufficient, and Dr. Sullivan should be precluded

from offering an opinion at trial since he cannot do so with a reasonable degree of medical

certainty.

Specifically, Dr. Sullivan testified as follows with respect to his opinions of Plaintiff

Gagnon:

> [Defendant's counsel]
>
> Q.     He [Plaintiffs' counsel] asked you if your [Dr. Sullivan's] opinion is
> based upon reasonable medical certainty.
>
> A.     Yes, that's right.
>
> Q.     What do you understand "reasonable medical certainty"
> to mean?
>
> A.     Well, I guess it means something like more than fifty percent
> (50%).
>
> Q.     Okay. And that would be true of all the opinions you gave here today?
>
> A.     Yes.

(Doc. 52A-1, NT 39).

Also, Dr. Sullivan testified as follows regarding his opinions of Plaintiff Peloquin:

> Q.     Okay. Now, you've given opinions with regards to Ms. Peloquin
> with regard to the opinions based on reasonable medical certainty.
> Again, what is your definition of reasonable medical certainty when you
> use it.

A. Something that you can be sure of more than half the time.

Q. Okay. Thank you sir.

(Doc. 52A-1, NT 104).

Defendant's counsel concluded that since Dr. Sullivan's testimony was inadmissible under FRE 702 and 703, all of his testimony and opinions were inadmissible. Thus, Defendant's counsel requested that Dr. Sullivan's entire testimony be precluded at trial.

Dr. Beck is Plaintiffs' expert witness who gave trial deposition testimony on January 13, 2009, regarding the Plaintiffs' alleged PTSD conditions which they claim were caused by the accident. Dr. Beck is a psychiatrist and has been one for about 40 years, but he was not Plaintiffs' treating psychiatrist. He recently completed a term as Chief of the Department of Psychiatry at the Jewish General Hospital in Montreal, Canada. (Doc. 54A-1, NT 4). He is also presently an Administrative Tribunal Judge and an Associate Professor of Psychiatry at McGill University. (*Id*.).[7]

With respect to Dr. Beck, Defendant's counsel stated that Plaintiffs' counsel never asked him questions based on a reasonable degree of medical certainty standard. Defendant's counsel stated that he asked Dr. Beck how certain he was of his opinions, and that Dr. Beck replied he did not use the phrase "reasonable degree of medical certainty." Dr. Beck indicated that it was a legal phrase that he did not utilize. Defendant's counsel then stated that Dr. Beck

---

[7]At oral argument, Defendant's counsel did not challenge the credentials and qualifications of either Dr. Sullivan or Dr. Beck with respect to their area of expertise. Also, during the depositions of Dr. Sullivan and Dr. Beck, Defendant's counsel raised no objections as to the qualifications of these doctors. (Doc. 52 A-1, NT 7 and Doc. 54A-1, NT 6).

then asked him what the standard meant to him, and counsel did not reply. Dr. Beck stated,

according to Defendant's counsel, that as far as being a psychiatrist, his opinions about Plaintiffs

were certain to him. Counsel stated that Dr. Beck cannot rely on his own subjective standard

regarding his expert opinions, *i.e.* to the extent Plaintiffs seek to admit them into evidence at

trial to support their claim that they were caused PTSD by the sight of seeing Mr. Hartmoyer's

dead body.[8]

Defendant's counsel concluded that since neither Dr. Sullivan nor Dr. Beck testified that

their opinions, as non-treating experts, were rendered to a reasonable degree of medical

certainty, their opinions should be found by the Court as inadmissable as a matter of law

because their testimonies failed to meet the legal standard required to admit an expert's

opinion.

---

[8]As mentioned above, in its November 2008 Memorandum and Order denying Defendant's Doc. 16 Motion *in Limine*, the Court stated:

> The Court finds that Plaintiffs' observation of Mr. Hartmoyer's corpse directly resulted from the physical impact of the accident and will allow evidence regarding the emotional impact of seeing his corpse and as well as Dr. Beck's testimony that the sight contributed to Plaintiffs' PTSD.

2008 WL 5061677, *2.

At oral argument, the Court asked Defendant's counsel about this finding of the District Court. Counsel replied that the District Court simply found that Plaintiffs' PTSD claim would go to the jury if their evidence at trial supported it. Defendant's counsel now argues in his Doc. 54 Motion that the expert witness testimony of Dr. Beck to support Plaintiffs' PTSD claim should be precluded. It would appear highly unlikely that Plaintiffs would be able to sufficiently support their PTSD claim at trial *sans* Dr. Beck's expert testimony, especially since Plaintiffs do not intend on calling their treating psychological professional(s).

Plaintiffs' counsel[9] argued that there are no magic words needed with respect to an expert's testimony to meet the applicable legal standard. Rather, Plaintiffs' counsel stated that the standard is simply whether there is sufficient bases for the opinions of the expert witnesses. Plaintiffs' counsel stated that the Court must look to the totality of the circumstances. Plaintiffs' counsel pointed out that the opinions of both Dr. Sullivan and Dr. Beck were based on their personal physical examinations of Plaintiffs, the reports of Plaintiffs' treating physicians, the objective medical tests, and on their extensive expertise and experience in their respective fields, *i.e.* orthopedic surgery and psychiatry.[10]

The Court finds that Dr. Sullivan's testimony, as quoted above (Doc. 52A-1, NT 39), is more akin to an opinion stating what is "most likely" as opposed to an opinion based only on mere possibilities. *See Keller*, 557 F. Supp. 2d at 679, n. 2("opinion stating what is 'most likely' is admitted to be weighed by the jury") (citation omitted). Also, Dr. Sullivan's opinions rely on the Pennsylvania and Canadian medical records of Plaintiffs, the reports of their treating doctors, and his physical exams of Plaintiffs. Further, as the *Keller* Court stated:

> "no support exists in the text or history of the Federal Rules of Evidence, or case law to limit an expert from reviewing and referring to the opinions of other experts. *Jordan v. Pinamont,* 2007 WL 4440900, at *1 (E.D.Pa. May 8, 2007) (Davis, J.). To the contrary, Rule 703 authorizes an expert to use any data reasonably relied upon by experts in the field. *See* Fed.R.Evid. 703; *In re TMI Litig.,* 193 F.3d at 697; *Jordan,* 2007 WL 4440900, at *1. Rule 703 permits

---

[9]While Attorney Comerford orally argued for Plaintiffs with respect to Dr. Sullivan and Attorney Cimini argued for Plaintiffs regarding Dr. Beck, the Court simply refers to both counsel herein as Plaintiffs' counsel.

[10]As with the arguments of Defendant's counsel at oral argument, the arguments of Plaintiffs' counsel at oral argument applied essentially to both pending Motions *in Limine*.

experts to rely on hearsay, on the theory that "the expert's validation, expertly performed and subject to cross examination, ought to suffice for judicial purpose." *ID Security Sys. Canada, Inc. v. Checkpoint Sys. Inc.,* 249 F.Supp.2d 622, 695 (E.D.Pa.2003) (Robreno, J.) (quoting Fed.R.Evid. 702 advisory committee's note).

*Id.* at 681.

Plaintiffs' counsel referenced the case of *Primavera v. Celetox*, 608 A. 2d 515 (Pa Super. 1992) (Doc. 52A-4), to support his argument that experts can base their opinions in part on the opinions of treating physicians and medical records of treating physicians even if the treating physicians do not testify. Plaintiffs' counsel pointed to the exception to the hearsay rule found at FRE 803(6) with respect to the reliance on opinions by experts. Plaintiffs' counsel also represented to the Court that, for trial, Plaintiffs will get the record custodians for all of the medical records of Plaintiffs, and he stated that Plaintiffs will cure this aspect of Defendant's arguments contained in its Motions, *i.e.* Drs. Sullivan and Beck were testifying as to the contents of inadmissable evidence.

As the Third Circuit stated in *Walker v. Gordon*, 2002 WL 31059157 **2 (3d Cir. 2002), "[t]he District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert. See Kumho Tire [v. Carmichael]*, 526 U.S. [137] at 152-53 [(1999)]." The *Walker* Court also stated that "*Daubert* requires that, when faced with a proffer of expert testimony, a trial judge determines 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.' *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. These gatekeeping requirements have been extended to apply to all expert

testimony.  *See Kumho Tire*, 526 U.S. at 147." *Id.*

Further, the *Walker* Court stated:

> In accordance with *Daubert*, trial courts are required to
> apply a reliability analysis to an expert's opinion; that opinion
> is "reliable" if it is based on the "methods and procedures of science"
> rather than on "subjective belief or unsupported speculation."
> *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (1994) (quoting
> *Daubert*, 509 U.S. at 590).  In other words, the expert must have
> "good grounds" for his belief.  *Id.* at 741-42 (explaining how Rule
> 702, which governs the use of expert testimony in the federal
> courts, embodies three distinct substantive restraints on the
> admission of expert testimony: qualifications, reliability and fit).

*Id.* at **3.

The Court in *Walker* provided guidance on the role of the trial court with respect to its

gatekeeping requirements.  The *Walker* Court explained:

> In performing its gatekeeping function and, in particular,
> in deciding whether an expert's report meets the reliability factor
> of a *Daubert* and Rule 702 analysis, the District Court is not to
> weigh the evidence relied upon or determine whether it agrees
> with the conclusions reached therein.  To the contrary, the role
> of the District Court is simply to evaluate whether the *methodology*
> utilized by the expert is reliable, i.e., whether, when correctly
> employed, that methodology leads to testimony helpful to the trier
> of fact.  *See Daubert*, 509 U.S. at 591-93 (noting that the testimony
> must "assist the trier of fact to understand the evidence or to
> determine a fact in issue" and that the trial court's determination
> "entails a preliminary assessment of whether the reasoning or
> methodology underlying the testimony is scientifically valid and
> of whether that reasoning or methodology properly can be
> applied to the facts in issue").  [FN7] Determinations regarding
> the weight to be accorded, and the sufficiency of, the evidence
> relied upon by the proffered expert, are within the sole province
> of the jury.  *Cf. Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134,
> 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an
> expert's opinion testimony, the credibility and weight of that
> testimony is to be determined by the jury, not the trial judge.").

*Id.*

The Court agrees with Plaintiffs regarding Defendant's above stated arguments, and it finds that Dr. Sullivan is qualified to offer an opinion with respect to Plaintiffs' physical injuries and that Dr. Beck is qualified to offer an opinion with respect to Plaintiffs' PTSD. Thus, the Court finds that the opinions of both doctors are admissible at trial. The Court finds that the opinions of both Dr. Sullivan and Dr. Beck are reliable and that their opinions are based on methods and procedures of their relevant medical fields.

Further, as the Court in *Walker* stated, "[a]n expert is ... permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also ... a proper subject for cross-examination. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F. 3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."). 2002 WL 31059157 at **3.

Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Court concurs entirely with Plaintiffs and finds that, upon review of t he record (Doc. 52A-1 and Doc. 54A-1), the trial depositions of Dr. Sullivan and Dr. Beck thoroughly demonstrate that their testimonies and expert opinions are based on much more than the

reports and opinions of Plaintiffs' treating physicians, as Defendant contended.  The Court also concurs completely with Plaintiffs that the testimonies of Dr. Sullivan and Dr. Beck are not mere parrot renditions of the opinions of Plaintiffs' treating physicians.  The deposition transcripts of Dr. Sullivan and Dr. Beck show, as Plaintiffs pointed out, that their opinions are based on a multitude of factors, including  their personal physical examinations of Plaintiffs (Doc. 52A-1, NT 26-30), the medical records (both Pennsylvania and Quebec) and reports of Plaintiffs' treating physicians (Doc. 52A-1, NT 21-26), the objective medical tests, and on their abundance of expertise and experience in their respective fields.

When Defendant's counsel asked Dr. Beck how ceratin he was of his opinions, Dr. Beck stated:

> Q.      Now, Doctor, how certain are you of your opinions?
>
> MR. THOMAS COMERFORD:
>
> Objection.
>
>> That's an inappropriate question.  The doctor has testified to a reasonable degree of certainty in this field and given opinions, and for you to ask him how sure he is of his opinions is an inappropriate question and objectionable, and I move to strike it.
>
> MR. JOSEPH HOLKO:
>
>> I'll rephrase the question.
>
> Q.      Doctor, have your opinions here today been given within a reasonable degree of medical certainty?
>
> A.      I'm reasonably certain of the opinions that I've given.  I've been in practice long enough to know that I do, sometimes, have things to learn.  However, on the basis of my best knowledge and

my best attempt to understand the situation, and based on my forty (40) years of clinical experience, and so on, I think that I'm reasonably certain about the conclusions that I've drawn.

Q.     What do you mean by reasonable certainty?

MR. THOMAS COMERFORD:

Objection.

> The doctor has just explained that he's given his opinions to a reasonable degree of certainty.  He's explained the basis for those opinions as his experience, et cetera.

> For you to go further than that is badgering the witness and inappropriate.  I move to strike it.

MR. JOSEPH HOLKO:

> I disagree.  He's going to have to answer the question.

Q.     Doctor, what's your definition of "reasonable certainty," as you use it?  Your understanding . . .

A.     I don't use it.

Q.     You don't use it?

A.     That's a legal term.

Q.     Okay.  Do you know what the legal term means?

A.     I'm assuming that you take  - - you try and see the evidence and you come up with the best possible understanding of that evidence and the conclusions you can draw from that evidence.

Q.     But you don't  - - - you don't know what it means in the legal context, if that's . . .

A.     No, but if you tell me what it means, I'll tell you if I think that that's what I think.

Q.    Yes.  I just want to know whether you know what it means, when you say it?

A.    You asked me to say whether I was reasonably certain.  In the psychiatric sense, yes, I have enough evidence for me to feel reasonably certain.

(Doc. 54A-1, NT 89-92).

The Court stated in *Martin v. Yellow Trans., Inc.*, 2006 WL 494880, *2 (E.D. Pa. 2006):

> Expert testimony that meets the qualification and reliability requirements is admissible "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" Fed.R.Evid. 702.  In other words, a witness' testimony meets the "fit" prerequisite if his opinions present relevant evidence that helps the factfinder.  *See Oddi*, 234 F.3d at 145 (*citing Daubert*, 509 U.S. at 591-92; *Paoli II*, 35 F.3d at 743).

Also, the Court finds absolutely no merit to Defendant's stated contentions regarding the inadmissibility of the medical records of Plaintiffs since they were not authenticated.  As stated, Plaintiffs' counsel represented to the Court that these records will, in fact, be authenticated for trial.  The Court makes this finding notwithstanding Defendant's clarification (Doc. 52A-5, p. 5) that it was not arguing that Drs. Sullivan and Beck could not use inadmissable evidence as the bases of their opinions (which they can), but rather, that Drs. Sullivan and Beck could not testify as to the contents of inadmissable evidence (which Defendant contends they were), *i.e.* the unauthenticated medical records of Plaintiffs.[11]

The Court also agrees with Plaintiffs, for the reasons stated in their Brief (Doc. 52A-4, pp. 6-8) and stated at oral argument, that the *Griffin* case, upon which Defendant heavily relied, is

---

[11]Indeed, as Plaintiffs' counsel stated, it is generally customary for opposing counsel to stipulate prior to trial or at time of trial to the authenticity of medical records.

distinguishable from our case, especially since the Court has already found that the testimonies of Dr. Sullivan and Dr. Beck were based on several factors, and not just the records and opinions of Plaintiffs' treating physicians, such as their personal physical examinations of Plaintiffs, the reports of Plaintiffs' treating physicians, the objective medical tests, and on their extensive expertise and experience in their respective fields.

Further, the Court agrees with Plaintiffs, as discussed above, and finds that both Dr. Sullivan and Dr. Beck relied upon a plethora of facts and data to support their opinions, as evidenced by their testimonies. (*See e.g.*, Doc. 52A-1, NT 28-36 and Doc. 54A-1, NT 44-49). Thus, the Court finds that the testimonies of Dr. Sullivan and Dr. Beck are stated with sufficient medical certainty. As the Court stated in *Woods v. Abrams*, 2008 WL 4950149, * 1 (W.D. Pa.), "the Third Circuit has stated that the phrase "a reasonable degree of medical certainty," is not required. *Holbrook,* 80 F.3d at 785. Instead, the court should look to the opinion's substance and determine whether it bears "sufficient certainty so as to make a medical judgment." *Schultz v. Celotex Corp.*, 942 F.2d 204, 209 (3d Cir. 1991)."

In conclusion, the Court finds that the record submitted to it (Docs. 52A and 54A) sufficiently shows that Dr. Sullivan's and Dr. Beck's opinions on causation have factual bases and that there are good grounds for their conclusions, *i.e.* their examinations o Plaintiffs, Plaintiffs' medical records, and Plaintiffs' reports of their treating doctors. Their opinions are also based on their extensive general experience in their fields and their extensive medical knowledge. Thus, the Court agrees with Plaintiffs that, after considering all the relevant facts and based on the totality of the circumstances, both Dr. Sullivan and Dr. Beck have stated their

18

opinions to a reasonable degree of medical certainty. *See Queisi v. Patel*, 2007 WL 527445 (E.D. Pa. 2007).

Further, Defendant will be able to attack the methods, opinions and credibility of Dr. Sullivan and Dr. Beck at trial.

However, while the Court does completely agree with Plaintiffs' positions, both as stated in their Briefs and as stated at oral argument, regarding Defendant's two pending Motions *in Limine*, it does not agree with Plaintiffs that sanctions are appropriate in this case. The Court finds that Defendant had reasonable bases to support their Doc. 52 and Doc 54 Motions, as shown by both the Motions and by Defendants' Briefs. The Court will deny Plaintiffs' request for sanctions and direct that both parties bear their own costs.

Accordingly, the Court will deny the Doc. 52 Motion *in Limine* of Defendant to Preclude Testimony of Plaintiffs' Expert, Dr. James D. Sullivan, and the Court will deny the Doc. 54 Motion *in Limine* of Defendant to Preclude Testimony of Plaintiffs' Expert, Dr. Philip R. Beck.

An appropriate Order will issue.


**s/Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 12, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTOINE GAGNON, et al.,                 :        CIVIL ACTION NO. **1:CV-05-2081**
                                         :
                                         :
                                         :        (Chief Judge Kane)
                                         :        (Magistrate Judge Blewitt)
                    Plaintiffs           :
                                         :
            v.                           :
                                         :
LEMOYNE SLEEPER CO., INC,                :
                                         :
                                         :
                    Defendant            :

## ORDER

**AND NOW,** this 12th day of **May, 2009**, in accordance with the foregoing

Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The **Doc. 52** Motion *in Limine* of Defendant to Preclude Testimony of Plaintiffs'

Expert, Dr. James D. Sullivan, is **DENIED.**

2. The **Doc. 54** Motion *in Limine* of Defendant to Preclude Testimony of Plaintiffs'

Expert, Dr. Philip R. Beck, is **DENIED.**

3. Plaintiffs' request for sanctions against Defendant regarding the filing of Defendants'

Docs. 52 and 54 Motions is **DENIED.**

                            **s/ Thomas M. Blewitt**
                            **THOMAS M. BLEWITT**
                            **United States Magistrate Judge**

**Dated: May 12, 2009**